859 So.2d 957 (2003)
STATE of Louisiana, Appellee,
v.
Kenneth WILSON, Appellant.
No. 37,555-KA.
Court of Appeal of Louisiana, Second Circuit.
November 6, 2003.
*959 Louisiana Appellate Project by Carey J. Ellis, III, Rayville, for Appellant.
Paul J. Carmouche, District Attorney, Donna Y. Frazier, Tommy J. Johnson, Assistant District Attorneys, for Appellee.
Before CARAWAY, DREW and MOORE, JJ.
MOORE, J.
Defendant was convicted of first degree robbery and sentenced as a fourth-felony offender to life imprisonment. He appealed the conviction and sentence. This court reduced defendant's conviction to simple robbery and affirmed the prison term without remand. State v. Wilson, 34,857 (La.App.2d Cir.08/22/01), 796 So.2d 45. The Louisiana Supreme Court vacated the sentence and remanded to district court for re-sentencing, holding that defendant was entitled to have the district court impose sentence anew and to challenge the constitutionality of the mandatory sentence as applied to him. State v. Wilson, 01-2815 (La.11/22/02), 836 So.2d 2. Thereafter, the trial court conducted a sentencing hearing and imposed the mandatory sentence of life imprisonment without benefits and denied a timely motion for reconsideration of sentence. Defendant filed the instant appeal alleging that the mandatory life sentence without benefits is unconstitutional as applied to him. For the reasons that follow, we vacate the life sentence without benefits and remand to the trial court for re-sentencing.

FACTS
The defendant robbed a teller at the Minden Bank and Trust by holding his hand in his pocket and giving the teller a note instructing her to put large bills in a bag quickly. The district court convicted defendant of first degree robbery, his fourth felony offense. The version of the Habitual Offender Law in effect at that time mandated a life sentence without the benefit of parole, probation, or suspension of sentence if "the fourth or subsequent felony or any of the prior felonies is a felony defined as a crime of violence under R.S. 14:2(13)." La. R.S. 15:529.1(A)(1)(c)(ii). Although defendant's three prior offenses were all non-violent (two convictions for issuing worthless checks and one for illegal possession of stolen things), the first degree robbery of which he was convicted is defined as a crime of violence under La. R.S. 14:2(13).
*960 Accordingly, the district court imposed the mandatory life sentence.
On appeal to this court, we concluded that the evidence was insufficient to support a first degree robbery conviction, and accordingly reduced defendant's conviction to simple robbery, which is also a crime of violence under R.S. 14:2(13). Consequently, we concluded that since the original life sentence without the benefit of parole, probation, or suspension of sentence would apply to the new conviction, we affirmed the prison term without remanding the case to the trial judge for sentencing.
Defendant applied for a writ of certiorari to the Louisiana Supreme Court contending that this court should have reduced the sentence, or remanded his case for re-sentencing after reversing the first degree robbery conviction and affirming a simple robbery conviction. The supreme court held that it was error not to remand the case for re-sentencing because the trial judge has the authority and the duty to impose the sentence fully cognizant of the nature of the crime for which the defendant is being sentenced.
The Court further stated that "the defendant was entitled to have the district court impose the sentence anew, and in connection therewith, to present evidence and/or argument to the district court judge that a sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence is unconstitutionally excessive because of the reduced conviction, the non-violent nature of the prior offenses, and the fact that the legislature has amended the Habitual Offender Law to provide a more lenient punishment for crimes committed after June 15, 2001." State v. Wilson, supra, 836 So.2d at 4.
On remand to the district court, defense counsel argued the fact that the Habitual Offender Law had changed and urged his view that under the facts and circumstances of this case, a life sentence without benefits would be constitutionally excessive, to which the court responded:
All right. The defendant was found guilty of first degree robbery. Subsequently the 2nd Circuit found that it should be simple robbery and amended his conviction to reflect that conviction.
The charge of simple robbery is listed as a crime of violence and according to the habitual offender statute if your fourth felony is a crime of violence then it is a mandatory life imprisonment reflecting the time of his conviction.
Therefore, the court will deny the defense's request to enter a lesser sentence and enter a sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. Credit given for time served.
Defendant now appeals again to this court contending that the life sentence imposed under the former version of the Habitual Offender Law is unconstitutionally excessive when applied to him because his three prior felonies were non-violent; because he was depressed due to the death of his son when he committed the offense; because he is addicted to cocaine; and, because the legislature has recently amended the Habitual Offender Law to mandate a life sentence in those cases only where the fourth felony and two of the prior offenses are defined as crimes of violence.[1]

*961 DISCUSSION
"The imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment." State v. Sepulvado, 367 So.2d 762, 767 (La.1979); see also State v. Dorthey, 623 So.2d 1276 (La.1993) (case remanded to district court to determine whether minimum sentence mandated by Habitual Offender Law was unconstitutionally excessive). In State v. Johnson, 97-1906 (La.03/04/98), 709 So.2d 672, the supreme court held that the mandatory minimum sentence of twenty years imprisonment was not unconstitutionally excessive for possession of cocaine by defendant as fourth-felony offender, even though defendant had no history of prior violent crimes. However, in Johnson, the court was presented with the question of "under what rare circumstances a sentencing court should exercise its authority to declare excessive a minimum sentence mandated by the Habitual Offender Law." The court noted that the analysis should begin with the presumption that mandatory sentencing guidelines adopted by the legislature are constitutional. Id. at 676. The Johnson court sought to clarify the holding of State v. Dorthey, supra, and to make it understood that a downward departure from the mandatory sentences of R.S. 15:529.1 is only available in truly rare situations and cannot be premised solely on the nonviolent nature of the current or prior offenses. Instead, the defendant must clearly and convincingly show that "[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." Id. When evaluating whether the defendant has met his burden, the trial court must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism. Further, if the trial court finds clear and convincing evidence that justifies reducing the mandatory minimum sentence, the court cannot impose whatever sentence it may feel is appropriate. Rather, the trial court must impose the longest sentence that is not constitutionally excessive with specific reasons to explain why that sentence is the longest sentence that is not constitutionally excessive. Johnson emphasized that a downward departure from the mandatory minimum of R.S. 15:529.1 should only occur in "rare situations." State v. Johnson, 709 So.2d at 677.
In reviewing a sentence for excessiveness, the appellate court must first determine whether the trial court complied with La. C. Cr. P. art. 894.1 when it imposed the sentence and then determine whether the sentence is too severe given the circumstances of the case and the defendant's background. State v. Lobato, 603 So.2d 739, 751 (La.1992). If the sentence needlessly imposes pain and suffering and is grossly out of proportion to the gravity of the offense so as to shock our sense of justice, then it may be determined to be unconstitutionally excessive as violative of La. Const. art. 1, § 20 (1974). Id. However, a sentence will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. Id. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary *962 even when there has not been full compliance with La. C. Cr. P. art. 894.1. Id.
Defendant asserts that the court articulated no reasons for the sentence imposed. During sentencing the trial court noted that the court of appeal reduced the first degree robbery conviction to simple robbery, but it remained a fourth felony and a crime of violence mandating a sentence of life imprisonment without benefit of parole, probation or suspension of sentence at the time of conviction. As we noted in our prior opinion in this case, compliance with La. C. Cr. P. art. 894.1 is not mandated where the sentence is statutorily required. State v. Wilson, 34,857 (La. App.2d Cir.08/22/01), 796 So.2d 45.
We note, however, that the Louisiana Supreme Court remanded this case to the district court for re-sentencing in light of several factors. The Court stated that "the trial judge in this case has the duty to examine the reduced conviction and determine, in accordance with the principles this court enunciated in Sepulvado, Dorthey, and Johnson, whether the mandatory sentence is constitutional as applied to this defendant." State v. Wilson, 836 So.2d at 4. We discern no such analysis in this record.
As noted above, R.S. 15:529.1(A)(1)(c)(ii) at the time of original conviction, subjected defendant to a mandatory life sentence as a fourth felony offender convicted of simple robbery even though his three priors were non-violent offenses. The penalties provided by La. R.S. 15:529.1 are not unconstitutional on their face. State v. Pollard, 93-0660 (La.10/20/94), 644 So.2d 370. The trial court has the authority to reduce the mandatory minimum sentence provided by the statute for a particular offense and offender when such a term would violate the defendant's constitutional protection against excessive punishment. Id. Because the minimum sentence is presumed constitutional, a trial court exercising its discretionary power under Johnson should depart from the statutory minimum only upon a finding of clear and convincing evidence to rebut the presumption of constitutionality. State v. Johnson, supra at 677. In Johnson, the supreme court did not believe that the mandatory minimum sentence of 20 years was excessive for a defendant whose current offense was possession of cocaine residue in a crack pipe and whose prior convictions were all nonviolent felonies.
Here, however, defendant has much more at stake than did the defendant in Johnson. In this case, the defendant will spend the rest of his life in jail because of the mandatory life sentence imposed. Whenever a defendant is faced with a mandatory life sentence as a multiple offender, heightened scrutiny is triggered when determining if defendant falls within those "rare" circumstances where a downward departure is warranted. State v. Burns, 97-1553 (La.App. 4th Cir.11/10/98) 723 So.2d 1013, writ denied, 98-3054 (La.04/01/99), 741 So.2d 1282.
On the instant record, we conclude that the defendant falls within that rare category of the "atypical" defendant, where the defendant's situation is not adequately addressed by the legislature's prescribed sentence of life imprisonment without benefit of probation, parole, or suspension of sentence. That is, the legislatively mandated sentence is not tailored to the culpability of this offender, the gravity of his offenses and the circumstances of this case. State v. Johnson, supra; State v. Wilson, supra.
*963 We have reviewed the entire criminal history of this defendant.[2] The three convictions prior to instant simple robbery conviction, while serious, resulted in prison terms of six months (suspended and revoked), 10 months (ordered to be served concurrently), and two years (suspended with probation extended and later revoked to be served concurrently). The six-month and two-year sentences were, in fact, initially suspended, but eventually served because defendant failed to report monthly to his probation officer. While these convictions are serious, they clearly do not reach a level of culpability and gravity warranting a life sentence. The facts and circumstances of the instant offense, however, are more serious:
On April 13, 2000, defendant went into a Shreveport branch of the Minden Bank and Trust at the 3400 block of Line Avenue. Defendant went to a service island in the bank and remained there for several minutes. Subsequently, he walked up to a bank teller, Tiffany Cone, and gave to her a green savings withdrawal slip on which he had printed the following words:
"This is a holdup 100 50 & 20 s quick"
Ms. Cone gave the defendant some money (apparently in an envelope) along with a purple dye pack explosive. Defendant walked out the front door and turned right, heading South on Line Avenue. Naomi Reeves, another teller next to Ms. Cone, witnessed the robbery and went to the back door of the building when defendant *964 left the building. She described the defendant as running down Line Avenue with a cloud of purple dust following him. The dye pack had exploded. Wilson was apprehended shortly thereafter in a nearby ditch with the money.
Defendant is 42 years old and homeless. After he was arrested, he gave the police a recorded statement admitting he was depressed over the death of his son in a train accident on June 29, 1999. He admitted that he has a history of drug and alcohol abuse. He stated that he was drunk at the time he committed the robbery, and felt "hopeless."
Our jurisprudence believes that age is a factor to be considered when the statutes impose such harsh penalties. State v. Taylor, 96-1843 (La.App. 4 Cir. 10/29/97), 701 So.2d 766, 773, writ denied 98-2233 (La.01/08/99), 734 So.2d 1224; State v. Hayes, 97-1526 (La.App. 1st Cir.5/15/98), 712 So.2d 1019, 1022, writ granted, cause remanded 98-1603 (La.12/11/98), 729 So.2d 584, on remand 97-1526 (La.App. 1st Cir.06/25/99), 739 So.2d 301, writ denied 99-2136 (La.06/16/00), 764 So.2d 955. The defendant in this instance indeed deserves serious punishment, including lengthy imprisonment, but a sentence less than life would afford him at least some opportunity to overcome his problems while incarcerated and offer him a modicum of hope.
The supreme court in Johnson, supra, made clear that the fact that defendant's felonies are non-violent alone is not sufficient to override the legislatively designed sentences of the Habitual Offender Law. Johnson, 709 So.2d at 676. But, it did note that, "the classification of a defendant's instant or prior offenses as nonviolent should not be discounted." Id. Three of defendant's four felonies were non-violent. Even his fourth felony, while classified as a violent offense, involved no actual violence. Cf. State v. Hayes, supra.[3] There is also no evidence in the record that defendant ever possessed a dangerous weapon, and Ms. Cone, the victim, testified that she never felt threatened.
Furthermore, this particular life imprisonment imposes an undue burden on the taxpayers of the state, who must feed, house, and clothe this defendant for life. State v. Hayes, 739 So.2d at 303. As defendant ages, these costs will only increase due to the need for geriatric health treatments.
The defendant in this case obviously needs lengthy incarceration. We believe that a severe sentence in this case, for example, a sentence of not less than 20 years, in conformity with La. R.S. 15:529(A)(1)(c)(i), but not more 30 years at hard labor, would meet all of the societal goals of incarceration and be constitutional in this case.
For all the reasons above, and after a review of the facts and circumstances of this particular defendant and the instant crime, we find clear and convincing evidence that this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. A sentence of life imprisonment for this defendant, on this record, is "disproportionate" *965 to the harm done and shocks "one's sense of justice." State v. Lobato, supra. Thus, we are unable to conclude that this life sentence is not excessive under the constitutional standard.
Accordingly, we vacate the life sentence imposed by the district court and remand to the trial court for re-sentencing, consistent with this opinion.
SENTENCE VACATED AND CASE REMANDED FOR RE-SENTENCING.
NOTES
[1] Act 403 of 2001 amended R.S. 15:529.1(A)(1)(c)(ii) to provide that, if the fourth felony and two of the prior felonies are defined as crimes of violence under R.S. 14:2(13), the offender shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence. Under the present Habitual Offender Law, defendant's crime would be punishable by a term ranging from 20 years at hard labor to life imprisonment at hard labor. R.S. 15:529.1(A)(1)(c)(ii).
[2] Defendant's first offense consisted of a guilty plea to one count of issuing a worthless check to Sears on February 21, 1987 in the amount of $166.58. The state agreed not to prosecute the defendant on several other counts arising out of issuing worthless checks in exchange for the guilty plea. Additionally, defendant agreed to make restitution in the total amount of worthless checks he issued, $1938.44. The court sentenced the defendant to six months in the parish jail, but suspended the sentence and ordered the defendant to serve two years supervised probation with special conditions, among them restitution of the total amount of worthless checks he issued, report monthly to his probation officer and pay a $10 per month supervising fee. The probation period ran from January 20, 1989 to January 20, 1991.

On January 26, 1990, defendant's probation officer caused a bench warrant to be issued for the defendant, who had not reported to his probation officer since February 9, 1989, just three weeks after receiving the probated sentence. Defendant was arrested on April 3, 1991 on another charge. While that charge was being prosecuted, on May 21, 1991, defendant's probation was revoked and defendant was ordered to serve the original six-month sentence with credit for time served.
Defendant was arrested on April 3, 1991 for possession of stolen things, a violation of La. R.S. 14:69. Defendant was in possession of a stolen Fender Stratocaster electric guitar and case valued at $650. Defendant pled guilty to the charge and was ordered to serve 10 months at hard labor concurrent with any other sentence to be served.
Between April 15, 1994 and April 25, 1994, defendant issued three worthless checks: $32.27 to Price Lo; $34.89 to Price Lo; and $90.99 to Kroger. Defendant was subsequently arrested and charged for Issuing Worthless Checks in violation of La. R.S. 14:71. Defendant entered a guilty plea to the charge on May 3, 1996. He was sentenced to 5 days in jail in lieu of paying court costs with credit for time served, and sentenced to two years at hard labor, which was again suspended, and defendant was placed on two years supervised probation. This was an agreed sentence.
Probation revocation proceedings were instigated on April 4, 1998 for reasons undisclosed. The case was taken up on May 6, 1998. Defendant admitted the allegations, and the court ordered the probation period extended for one year from May 6, 1998.
The following month, probation revocation proceedings were again initiated by defendant's probation officer. Defendant denied the allegations of violation of his probation. After a hearing on August 19, 1998, defendant's probation was revoked, and he was ordered to serve the original two-year sentence at hard labor concurrently with any other sentence and with credit for time served.
[3] The defendant in Hayes had a criminal history of thefts and issuing bad checks similar to the defendant in this case, none of which involved the use of a dangerous weapon. His fourth felony, a simple robbery, involved pushing a minor from his bicycle and stealing it. The court of appeal concluded that a life sentence was constitutionally excessive under State v. Johnson, supra, and that a sentence between 20 and 40 years was appropriate, and remanded the case to the trial court for re-sentencing in accordance therewith.